## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JANE UTAUS-DE DOE** | § | |
| *Plaintiff*, | § | |
| **v.** | § | **C.A. No.** 1:19-cv-00103 _____ |
| | § | |
| **THE UNIVERSITY OF TEXAS** | § | |
| **AT AUSTIN** | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff JANE UTAUS-DE DOE on behalf to file this "Plaintiff's Original Complaint" as follows:

### PREAMBLE

*This is a suit for damages and a request for equitable relief resulting from the intentional violation of federal and state protected rights of a student by Defendant The University of Texas at Austin (including rights protected by the ADA, Section 504, Title IX, Sections 1983, the U.S. Constitution, and the Texas Constitution) resulting in serious, ongoing economic and emotional harm to Plaintiff Jane.*

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    1

**SUMMARY OF CONTENTS:**

**A. NATURE OF SUIT**
**B. PARTIES**
**C. JURISDICTION and VENUE**
**D. FACTUAL ALLEGATIONS**
1. *Who is Plaintiff Jane?*
2. *UTAustin's Draconian Disciplinary Dragnet.*
3. *Purported Public Interest being protected by UTAustin's Draconian Disciplinary Dragnet.*
4. *Plaintiff Jane becomes a computer generated Targeted Student.*
5. *UTAustin's Draconian Disciplinary Dragnet illegally violated Plaintiff Jane's Rights.*
6. *Plaintiff Jane has been seriously harmed by UTAustin's Discriminatory Actions.*
7. *Defendant UTAustin's Action Under the Color of State Law.*
8. *Administrative Remedies.*
**E. CAUSES OF ACTION**
**F. CONCLUSION**

## A.   <u>NATURE OF SUIT</u>

1.     Plaintiff Jane (defined hereafter) is a twenty year old woman, now a Sophomore attending Defendant UTAustin (defined hereafter). During Jane's Freshman year attending UTAustin, being the 2017-2018 school year, Jane was targeted by Defendant UTAustin's Draconian Disciplinary Dragnet (defined hereafter); Jane's substantive and procedural due process rights, and, equal protection rights were trampled upon; Jane was denied all of her previously approved Section 504 Accommodations (defined hereafter) and her rights under the

ADA (defined hereafter); and sanctions were issued which have harmed, and will continue to harm Jane, emotionally and economically for perhaps the rest of her life.

2.     Plaintiff Jane now files this original action for damages and equitable relief pursuant to:

(a)     Section 504 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, 29 U.S.C. § 794;

(b)     Title II of the Americans with Disabilities Act, 42 U.S.C.A. §§ 12131–50 (2011);

(c)     Title IX of the Education Amendments of 1972), 20 U.S.C. § 1681 et. seq.;

(d)     42 U.S.C. § 1983 with regards to:

(i)     Defendant's violations of the laws of the United States; and

(ii)     Defendant's denial (under the color of law) of Plaintiff Jane's equal violation, procedural due process violations, and substantive due process violations under the Fourteenth Amendment to the U.S. Constitution; and

(e)     Defendant's actions in violations of provisions of the Texas Constitution.

## B.     PARTIES

3.     Plaintiff  JANE UTAUS-DE DOE ("Jane") is a female residing in the State of Texas. Because of the privacy issues involved in this matter and the likelihood of retaliation by Defendant, Jane is hereby exercising her rights to proceed with this matter anonymously.

4.     The need to protect the identity of Jane shall not hinder the defense of this matter, for the facts are well known to the Defendant. When applying the balancing tests to determine the needed protection of the privacy of Plaintiff Jane *vs.* the small inconvenience to the Defendant, the protection of Plaintiff's privacy rights prevails.

5.     At such time as the Court might agree on procedures designed to protect the privacy of Plaintiff Jane and ensure an absence of retaliation, Jane's identity shall be disclosed.

6.     Defendant **THE UNIVERSITY OF TEXAS AT AUSTIN** ("UTAustin") is a public university operating in the State of Texas and may be served with citation by serving Defendant's President as follows:

**The University of Texas at Austin**
**Attn: Gregory L. Fenves**
**110 Inner Campus Drive**
**Stop G3400**
**Austin, Texas 78712**

**PLAINTIFF'S ORIGINAL COMPLAINT**

tpg 2019.02.09

7.    Although Defendant UTAustin is owned and operated by the State of Texas, Defendant UTAustin does receive grants and other funding from the United States.

## C.  JURISDICTION and VENUE

8.    The jurisdiction of this Court is in accordance with 28 U. S. C. § 1331 as involving a *federal question* proceeding arising under:

    (a)    Section 504 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, 29 U.S.C. § 794 ("Section 504");

    (b)    Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12131–50 (2011) ("ADA");

    (c)    Title IX of the Education Amendments of 1972), 20 U.S.C. § 1681 et. seq. (Title IX"); and

    (d)    42 U.S.C. § 1983 ("Section 1983").

9.    Venue is proper in the Western District of Texas (Austin Division) because Defendant UTAustin operates its university in Travis County, Texas which is within the Western District of Texas.

### D.    FACTUAL ALLEGATIONS

#### *1.    Who is Plaintiff Jane?*

10.    Plaintiff Jane is a 20 year old woman attending Defendant UT Austin, seeking a Bachelor Degree of Science and Arts, in Human Development Family Science with a Health Certificate.

11.    Plaintiff Jane grew up in a small town in New Jersey and was raised by loving parents who emphasized hard work and personal integrity, two attributes Jane carries with her daily.

12.    Prior to enrolling in Defendant UTAustin in the Fall of 2017 and while still in high school in New Jersey, Plaintiff Jane (for four years) was a patient volunteer in the Pediatric Unit at Saint Barnabas Medical Center in Jane's home town.

13.    As a pediatric patient volunteer, Plaintiff Jane: worked with children patients to make their time at the hospital more comfortable; played games, watched movies, and led arts and crafts projects with the children patients; and provided relief to the parents of the children patients, during an obviously stressful and difficult time.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

14.     While serving as a pediatric patient volunteer, Plaintiff Jane also made time to serve as a student mentor (for four years) with the National Council for Jewish Women ("NCJW") in Jane's hometown.

15.     As a student mentor with the NCJW's after school program for elementary school students, Plaintiff Jane played games, read stories, distributed snacks, and helped the children with homework.

16.     Still wanting to contribute more to her community, in 2013, Plaintiff Jane founded Book Bag Buddies ("BBBuddies").

17.     Believing that every child deserves school supplies and has the right to a quality education regardless of circumstance, Plaintiff Jane created BBBuddies with the sole mission of providing basic school supplies to students in need around the world.

18.     As the continuing president of BBBuddies, Plaintiff Jane orchestrated (a) the marketing and public relations, (b) the design and oversight of the custom designed website, (c) book drive activities including working through local Home and School Associations and school administrators to coordinate school supply drives, organize school-wide assemblies to educate students about the struggle of student peers in other towns, states, and countries have, and (c) rallied persons

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      7

around an interest in working together to solve the underlying deficiency of children needing school supplies.

19.    Under Plaintiff Jane's leadership and direction, BBBuddies has distributed, and continues to distribute, school supplies to schools and students in need across the globe totaling well over 1500 books and bags.  In addition to being featured in her local New Jersey newspapers highlighting the mission of BBBuddies, Plaintiff Jane and BBBuddies were featured in an article in *Justine* Magazine for girls.

20.    Not surprisingly, Plaintiff Jane had a vast array of university options to choose from before Jane selected Defendant UTAustin in the Fall of 2017.

21.    Quoting Plaintiff Jane from her presentation at the Jane's Hearing (defined hereafter):

> "In selecting the University *[of Texas at Austin]*, I was specifically interested in finding one [a university] that's large enough to offer a vast array of educational and cultural opportunities.
>
> When I stepped on to the UT campus, I knew this was the place for me. I was so very excited when I learned more about UT Austin because it fulfilled all of what I was looking for. … I am seeking a degree in human development family sciences because I love working with children, and I would love to help them … in the classroom as a teacher…*[in]* health care as a pediatric RN or as a family therapist.

I take my time here *[at UTAustin]* very seriously and work very hard…I'm proud to have the chance to study here *[at UTAustin].*

22. Upon enrollment in Defendant UTAustin, Plaintiff Jane took the necessary steps to register for accommodations due to Jane's federally recognized disabilities ("Jane's Disabilities") as allowed by Jane's Section 504 rights. As a result, Jane was granted certain "Accommodations."

23. After enrolling in Defendant UT Austin, Plaintiff Jane also became a member of Alpha Epsilon Phi and serves on its executive board and vice-president of the sorority's philanthropy efforts. Under the leadership of Jane, Alpha Epsilon Phi has participated in various forms of community service projects (including fundraising and recreational sporting events) resulting in donations of over $1,500 for a national philanthropy to support B+ Foundation's efforts to fight childhood cancer.

24. Excluding the Stolen Class (defined hereafter), Plaintiff Jane's grade point average for the Spring Semester of 2018 would have been 3.46. Even after being a Targeted Student (defined hereafter) Jane attained a 3.33 grade point average for the semester just concluded, being the Fall semester of 2018.

2.    *UTAustin's Draconian Disciplinary Dragnet.*

25.    In advancement of the hereafter described Public Interest, Defendant UTAustin has created various protocols applicable to all students attending Defendant UTAustin with regards to allegations of cheating, plagiarism, collusion, and student honesty and integrity matters (hereafter, collectively "Protocols"). Although the Protocols are accessible on line as part of hundreds of publications and handbooks, most students at Defendant UTAustin (including Plaintiff Jane) have no actual knowledge of the Protocols.

26.    Rather than creating steps to ensure that the students at Defendant UTAustin (including Plaintiff Jane) are truly aware of the Protocols, Defendant UTAustin believes it is sufficient to post thousands and thousands of pages on line, assuming that the students are meticulously downloading, reading, and analyzing the Protocols, rather than tending to such student's classes.

27.    Under the Protocols, a student attending Defendant UTAustin can become a "Targeted Student" for alleged violations of the Protocols by many different persons and means, including but not being limited to the following:

      (a)    an employee of Defendant UTAustin;

      (b)    various third-party surveillance software programs (some run Defendant UTAustin and some not), operating

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

without the student's full knowledge and understanding of the Orwellian "Big Brother Surveillance" of the students;

(c)     a student guilty of violating the Protocols who is willing to offer names of other students in exchange for a lessor sanction, whether such students were involved or not;

(d)     an enemy of a student;

(e)     an ex-boyfriend or ex-girlfriend of a student; or

(f)     essentially anyone willing to spread a rumor about a student.

(Hereafter, collectively defined as the "Targeting").

28.     Under the Protocols, once a student of Defendant UTAustin has become a Targeted Student of an alleged violation of the Protocols, the Protocols allow for implementation of various investigation, interrogation, and prosecution steps.

29.     The use of the term "investigation" hereafter is used through with great reluctance, as the actual steps pursued by Defendant UTAustin are shrouded in mystery and unlikely follow any meaningful investigation as the term is generally used and considered. Further, the use of the term "interrogation" in this Complaint is not intended to be considered mere rhetoric, for the actions undertaken by

**PLAINTIFF'S ORIGINAL COMPLAINT**                                         11

Defendant UTAustin are established steps to interrogate the student without the student being advised of the potential Sanctions (defined hereafter) that can be issued against the student, based solely on the student's statements.

30.     The investigation, interrogation, and prosecution steps utilized by Defendant UTAustin after the Targeting of a student, include but are not  limited to the following:

       (a)     an investigation and interrogation of the Targeted Student by the accuser;

       (b)     an initial, summary determination of guilt by the accuser;

       (c)     an initial recommendation for a sanction by the accuser;

       (d)     an investigation and interrogation of the Targeted Student by the Student Conduct and Academic Integrity department within the Office of the Dean of Students ("Dean of Students");

       (e)     a lack of written procedures to be followed during the foregoing referenced investigations and interrogations;

       (f)     a summary determination of guilt by the Dean of Students (the exclusion of the term "innocence" in not intended to be hyperbole, for upon information and belief, very few of the Targeted Students are determined to be innocent by the Dean of Students);

       (g)     a summary issuance of sanctions by the Dean of Students;

       (h)     in some cases, the process stops at this point with no

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

further review or appeal;

(i)     in other cases (such as the matter with Plaintiff Jane), a *semi-de novo* hearing before a "Committee" of students, and university educators or administrators, all of whom are selected by Defendant UTAustin, is held to consider the allegations (hereafter "Hearing");

(j)     limited and confusing discovery steps before the Hearing;

(k)     limited and confusing procedures followed during the Hearing;

(l)     although the Targeted Student is denied the right to legal counsel throughout implementation of the Protocols, Defendant UTAustin usually has two to three attorneys present during the Hearing, to represent Defendant UT Austin, as well as to participate and preside over the prosecution of the Targeted Student during the Hearing;

(m)     limited and confusing burdens of proof required during the Hearing, under the over used and rarely understood umbrella of "a preponderance of the evidence;"

(n)     private, closed session discussions, without the Targeted Student but with the legal counsel representing Defendant UTAustin, to determine guilt and sanctions, all of which occur before any record of the Hearing can be transcribed and reviewed;

(o)     determination of guilt and issuance of sanctions by the Hearing Committee;

(p)    the availability (in most cases) of a "paper" appeal ("Appeal") to the Office of the President of Defendant UTAustin; and

(q)    limited and confusing procedures to be followed during the Appeal;

(r)    limited and confusing burdens of proof required during the Appel, under the over used and rarely understood umbrella of "a preponderance of the evidence;"

(s)    a unilateral and final determination of the proprietary of the determination of guilt and sanctions by the Office of the President of Defendant UTAustin; and

(t)    a glaring lack of confidentiality protections throughout the foregoing.

(Hereafter, the Protocols, the Targeting, the foregoing investigations, interrogations, Hearing, Appeal, determinations of guilt, issuance of sanctions, and lack of confidentiality safeguards shall be collectively referred to as the "Draconian Disciplinary Dragnet").

31.    Throughout the entirety of Defendant UT Austin's Draconian Disciplinary Dragnet, the Targeted Student is denied the right to legal counsel ("Denial of Legal Counsel").

32.     If found guilty during the Draconian Disciplinary Dragnet, there are a number of "Sanctions" that are issued against the Targeted Student, including but not being limited to:

(a)     placement of the Targeted Student on disciplinary probation;

(b)     placement of the Targeted Student on academic probation;

(c)     the issuance of a zero for a particular exam or assignment;

(d)     the issuance of an "F" for a particular exam or assignment;

(e)     the issuance of a Zero for a particular class;

(f)     the issuance of an "F" for a particular class;

(g)     suspension from Defendant UTAustin;

(h)     expulsion from Defendant UTAustin;

(i)     mandated attendance at counseling or meditative sessions directed by Defendant UTAustin;

(j)     the retention of all records of the Draconian Disciplinary Dragnet within the Targeted Student's student file for seven years; and

(k)     a glaring lack of confidentiality protections as to the issuance of the Sanctions.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      15

33.     Throughout the entirety of Defendant UT Austin's consideration and issuance of the Sanctions (such Sanctions hereby deemed to be a part of the Draconian Disciplinary Dragnet), the Targeted Student is, again, subject to the Denial of Legal Counsel.

34.     In the words of Defendant UTAustin, the Draconian Disciplinary Dragnet is (paraphrasing) "*an educational process for the students, which does not require the right to legal counsel or a higher level of due process*" (hereafter, the "Educational Process View").

35.     Defendant     UTAustin's     Educational     Process     View     exists notwithstanding that the Draconian Disciplinary Dragnet can directly cause serious economic and emotional harm to the Targeted Student, including but not limited to the following:

     (a)    causing the Targeted Student to retake a class, thereby incurring the economic damages of having to pay for the same class twice;

     (b)    depending on how often Defendant UT Austin offers the class to be retaken, the retake requirement can often require an additional year of attendance at Defendant UTAustin, which then mandates additional tuition, room, and board expenses;

(c)     under the foregoing circumstances when an additional year, or perhaps more, is required as a result of the Sanctions, then the Targeted Student is denied the ability to enter into the employment market or continue with additional university studies as planned, causing economic harm for the rest of the Targeted Student's life;

(d)     under the foregoing circumstances when an additional year, or perhaps more, is required as a result of the Sanctions, then the Target Student is faced with additional student loan repayments and interest;

(e)     a potential transfer of the Targeted Student to other universities can be denied;

(f)     the Targeted Student's reputation is harmed within the professor and administrative community of Defendant UTAustin and elsewhere;

(g)     the Targeted Student's reputation is harmed within the student community of Defendant UTAustin and elsewhere;

(h)     the Targeted Student's reputation is harmed within the family of the Targeted Student;

(i)     because employers and other university applications now often ask whether the Targeted Student was ever the subject of a disciplinary matter while at Defendant UTAustin, the required "yes" answer by the Targeted Student eliminates employment and educational opportunities with a lifetime economic impact;

(j)   the mandated counseling or meditative sessions (being nothing more than forced counseling not under the care of a medical professional) can interfere with the emotional and mental well-being of the Targeted Student;

(k)   the Targeted Student often suffers serious negative emotional, physical, and mental harm;

(l)   the Targeted Student's emotional, physical, and mental harm can continue throughout such Student's life;

(m)   the Targeted Student's emotional, physical, and mental harm can cause scenarios of self-inflicted physical harm to the Targeted Student that previously did not exist;

(n)   the Targeted Student's emotional, physical, and mental harm can create life and death risks to the Targeted Student that previously did not exist; and

(o)   the treatment of the foregoing described emotional, physical, and mental harm creates health care and medical expenses.

Hereafter, the foregoing shall be referred to collectively as the "Potential Harm."

3.   ***Purported Public Interest being protected by UTAustin's Draconian Disciplinary Dragnet.***

36.   Based upon information and belief, the purported public interest ("Public Interest") being advanced and protected by Defendant UT Austin through Defendant UTAustin's use of the Draconian Disciplinary Dragnet is to protect the integrity of degrees granted by Defendant UTAustin.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

37.     When reviewing, however, the Potential Harm to the Targeted Student, Defendant UTAustin's Educational Process View is untenable, for the Draconian Disciplinary Dragnet is arbitrary, or, at least not reasonably related to Defendant UTAustin's Purported Public Interest.

38.     Further, the Potential Harm to the Targeted Student does not support the limitations and failures of Defendant UTAustin's Draconian Disciplinary Dragnet, and, the need to avoid the Potential Harm to be suffered by the Targeted Student far outweighs the manner in which Defendant UTAustin has elected to protect the stated Public Interest.

### 4.     *Plaintiff Jane becomes a computer generated Targeted Student.*

39.     In May of 2018, Plaintiff Jane was in her second semester at Defendant UTAustin.

40.     As an elective, inside her major field of study, Plaintiff Jane enrolled in RTF 306-College of Communication, Introduction to World Cinema History (hereafter, the "Class").

41.     Plaintiff Jane enjoyed the Class and believed she was doing well with her assignments and exams. Approaching the final exam essay ("Final"), Jane believed that she was carrying near an A as a grade for the Class.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                         19

42.    A teaching assistant was assigned to the Class (hereafter, "TA"). Plaintiff Jane would often speak and work with the TA to facilitate her comprehension of the Class and to prepare the best Jane could for assignments and quizzes.

43.    In March of 2018, Plaintiff Jane sought assistance from the TA in preparation for a simulation of an upcoming quiz. Both Jane and the TA enjoyed their interaction, and the TA gave Jane high praise on the work Jane was doing in the Class.

44.    In May of 2018, Plaintiff Jane again sought out the assistance of the TA, to review various issues in preparation of the approaching Final. Jane and the TA did, in fact, meet and had a productive and enjoyable preparation session for the Final.  Based on the feedback from the TA, Jane's approach to the final and Jane's understanding of what would be expected of Jane on the Final was "spot on."

45.    Crammed in with Plaintiff  Jane's other classes and final exams, Jane completed and electronically turned in her Final, which was made up of two essays responding to various questions and issues presented.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

46.     Although one of Plaintiff Jane's Accommodations was additional time to complete assignments, quizzes, and exams, Jane was not granted any additional time to complete the Final.

47.     After turning in the Final, Plaintiff Jane completed all remaining course work for the Spring 2018 semester and returned to New Jersey for a short visit home. Jane was confident that she had done well on her Final and was looking forward to an A for the Class.

48.     Sometime in May of 2018, after Plaintiff Jane had returned to New Jersey, Jane received a call from the Class professor (hereafter, "Professor A").

49.     Plaintiff Jane was excited to see and hear a phone message from Professor A, for Jane thought that perhaps Professor A was going to invite Jane to be a teaching assistant for the Class in the Fall of 2018.

50.     Upon returning the phone call to Professor A, Plaintiff Jane was informed that Professor A was questioning Jane's integrity based solely upon information generated by one of Defendant UTAustin's Big Brother Surveillance programs, in this case, a third-party application called Turnitin.

51.     Based solely on the Turnitin computer generated report (hereafter, the "Turnitin Report"), Professor A was accusing Jane of plagiarism on the Final ("Plagiarism Allegation").

52.     Plaintiff Jane was shocked, dismayed, and severely distressed at the false Plagiarism Allegation being asserted by Professor A.

53.     Plaintiff Jane was wholly unaware that Jane was now a Targeted Student within Defendant UTAustin's Draconian Disciplinary Dragnet.

54.     A series of email exchanges between Plaintiff Jane and Professor A, ensured during which Professor A:

(a)     continually altered the base facts purportedly supporting the Plagiarism Allegation;

(b)     made her own assumptions and conclusions as to meaning of the Turnitin Report;

(c)     ignored Plaintiff Jane's interactions with the TA, which was supportive of Jane's innocence;

(d)     ignored the denial of Plaintiff Jane's Accommodation of being allowed additional time to complete the Final;

(e)     included issues related to whether Plaintiff Jane had properly cited Jane's sources ("Citation Issues") as opposed to plagiarizing from sources on the Internet; and

(f)     exhibited the attitude of having taken upon a personal vendetta against Plaintiff Jane.

55.    After toying with Plaintiff Jane long enough, Professor A gave Plaintiff Jane a simple, coercive choice:

> "To clarify, I am offering you two options: 1. You can receive an F on the final exam which would result in a D for the course OR 2. I can forward the case on to UT Judicial Services."

(Hereafter, "Professor A's Threat").

56.    Having worked hard in the Class during the Spring, knowing in her heart and soul that the Plagiarism Allegation was false and wholly without merit, Plaintiff Jane refused to succumb to Professor A's Threat.

57.    Instead of accepting an unwarranted D for the Class, Jane elected to proceed with the Professor A referenced UT Judicial Services, despite the failure of anyone at Defendant UTAustin explaining to Jane exactly what such UT Judicial Services were.

58.    The mere use of the term "judicial services" by Professor A is, itself, a notable part of the misleading and often false aspect of Defendant UTAustin's Draconian Disciplinary Dragnet, for such Dragnet does not involve any court of law or judicial procedures.

59.    In choosing to do so, Jane was entirely unaware that Jane had already become entangled in Defendant UTAustin' Draconian Disciplinary Dragnet.

60.    Following the playbook of Defendant UTAustin's Draconian Disciplinary Dragnet, upon Plaintiff Jane's return to Austin for the Summer of 2018, Jane was summoned to a meeting with the Dean of Students (hereafter "DS Meeting") which had received the Plagiarism Allegation from Professor A.

61.    Plaintiff Jane was denied the right to attorney participation in the DS Meeting.

62.    The allegations and arguments made (by Defendant UTAustin) during the DS Meeting:

(a)    were confusing;

(b)    were inconsistent with what Professor A had originally told Jane as to the Plagiarism Allegation;

(c)    included the Dean of Student's own unsupported assumptions and conclusions as to meaning of the Turnitin Report;

(d)    ignored Plaintiff Jane's interactions with the TA, which supported Jane's innocence;

(e)    ignored the denial of Plaintiff Jane's Accommodation of being allowed additional time to complete the Final;

(f)     centered upon the Citation Issues, as opposed to plagiarizing from sources on the Internet;

(g)     assumed the Plagiarism Allegation of Professor A to be true notwithstanding that the facts and issued were centered on the Citation Issues;

(h)     assumed that Plaintiff Jane was obviously guilty of something, because Jane was a Targeted Student; and

(i)     were clearly conclusory.

63.     After the foregoing presentation by the Dean of Students but still during the short DS Meeting, the Dean of Students informed Plaintiff Jane that Jane was found guilty of the Plagiarism Allegation, proven by a preponderance of the evidence, and would be sanctioned with (a) an F or Zero for the Class, (b) be placed on academic integrity probation through December 2018, and (c) be required to participate in a Virtual Academic Integrity module tutorial (hereafter, the "University Decision").

64.     Because the University Decision included "an F or Zero for the Class" which would have resulted in a Stolen Class for Plaintiff Jane, Jane was (during the same DS Meeting) granted certain options to appeal the University Decision. One such option was the Committee Hearing option, which Plaintiff Jane selected.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                              25

65.     Over the next several weeks, Plaintiff Jane was presented with limited and confusing communications and procedures leading up to a hearing (hereafter, the hearing held for Plaintiff Jane shall be referred to as "Jane's Hearing").

66.     Consistent with Defendant UTAustin's Denial of Legal Counsel, Plaintiff Jane was denied the right to have an attorney communicate with Defendant UTAustin.

67.     At Jane's Hearing, Defendant UT Austin had two or three attorney's participating on behalf of Defendant UTAustin, the "prosecutor," being the same person who had made the University Decision, Professor A testifying against Plaintiff Jane, and the decision making committee members of two students and one educator, each having been selected by Defendant UTAustin.

68.     Plaintiff Jane faced the forgoing essentially alone; for although Jane was allowed to have an attorney present at Jane's Hearing, said attorney was prohibited from participating in Jane's Hearing in any manner.

69.     Not particularly different from the prior steps of Defendant UTAustin's Draconian Disciplinary Dragnet, the discussion and testimony offered by Defendant UTAustin during Jane's hearing:

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

(a)     was confusing;

(b)     was inconsistent with what Professor A had originally told Jane as to the Plagiarism Allegation;

(c)     was inconsistent with the allegations made during the DS Meeting;

(d)     included Professor A's own assumptions and conclusions as to the meaning of the Turnitin Report;

(e)     included the Dean of Student's own assumptions and conclusions as to the meaning of the Turnitin Report;

(f)     ignored Plaintiff Jane's interactions with the TA, which supported Jane's innocence;[1]

(g)     ignored the denial of Plaintiff Jane's Accommodation of being allowed additional time to complete the Final;

(h)     included and actually centered upon  the Citation Issues to as opposed to plagiarizing from sources on the Internet;

(i)     displayed a shocking lack of understanding as to the Turnitin Report; and

(j)     assumed the Plagiarism  Allegation of Professor A to be true.

---

[1] Although an obvious and key witness, Defendant UTAustin failed to call the TA as a witness, for probably fear that the TA's testimony would contradict the testimony of Professor A. Plaintiff Jane was unable to gain the cooperation of the TA, for the TA's most probable fear of retaliation by Defendant UTAustin.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                27

(Hereafter, the foregoing shall be collectively referred to as "Defendant UTAustin's Presentation.")

70.     The     transcript     of     Jane's     Hearing     confirms     that:

(a)     Plaintiff Jane clearly and thoroughly explained how Jane approached and prepared for the Final;

(b)     Plaintiff Jane had a vastly superior understanding of the Turnitin Report as compared to the committee members and all the representatives of Defendant UT Austin;

(c)     Professor A had never even met Plaintiff A prior to Jane's Hearing, even though Professor A was the professor in charge of the Class;

(d)     Professor A viewed Plaintiff Jane's challenge to the Plagiarism Allegation as a personal attack upon the integrity of Professor A;

(e)     Professor A had never before taught the Class as an on-line class;

(f)     Professor A acknowledged that Plaintiff Jane had been a good student of the Class based on Jane's grades prior to the Final;

(g)     Professor A acknowledged that Plaintiff Jane had a grade of an A going into the Final;

(h)     Professor A confirmed making Professor A's Threat, which Plaintiff Jane rejected;

(i)     Professor A had a history of failing students based on reports from Turnitin;

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

(j)     Professor A acknowledged that there are no written directives from Defendant UTAustin on how to use and interpret reports from Turnitin;

(k)     Professor A admitted that the Turnitin Report, itself, does not establish plagiarism;

(l)     Professor A admitted that during the initial phone call between Professor A and Plaintiff Jane, Professor A was focused on the Citation Issues, not a plagiarism issue;

(m)     Professor A admitted that Plaintiff Jane had completed the Final in accord and with the approval of the TA;

(n)     the prosecution team from the Dean of Students kept objecting to Plaintiff Jane's examination of Professor A;

(o)     based on questions to Plaintiff Jane from the Committee members, Jane had a strong understanding and command of the issues Jane presented in the Final, indicating that Jane had not merely cut and pasted quotations from the Internet as alleged;

(p)     no one in Jane's Hearing had an understanding as to the definition of plagiarism which was to be used as the basis of the Plagiarism Allegation;

(q)     no one in Jane's Hearing had an understanding as to how Jane's perhaps improper citation to one or two authorities within Jane's Final meshed with the Plagiarism Allegations; and

  (r) Plaintiff Jane was rushed and anxious during the Final because Jane was denied her Accommodation of additional time.

71. Consistent with Defendant UTAustin's Draconian Disciplinary Dragnet, immediately after Jane's Hearing and before a transcript of Jane's Hearing could be compiled, the Committee met in private, along with lawyers and representatives of Defendant UTAustin and found Plaintiff Jane guilty of the Plagiarism Allegation, based on a preponderance of the evidence (hereafter the "Hearing's Decision").

72. The sanctions contained within the Hearing's Decision mirrored the University Decision as to Plaintiff Jane being placed on academic integrity probation through December 2018 and being required to participate in a Virtual Academic Integrity module tutorial. However, rather than issuing an F for the Class, the Hearing's Decision issued a Zero for the Class, resulting in the Class being stolen from Plaintiff (the "Stolen Class").

73. Because the Hearing's Decision resulted in a Stolen Class, Defendant UTAustin's Draconian Disciplinary Dragnet did include a "paper" appeal to the president of Defendant UTAustin, being Gregory L. Fenves ("President Fenves").

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

74.   Without the benefit of a transcript of Jane's Hearing, Plaintiff Jane filed her appeal ("Jane's Appeal") to President Fenves without the ability to make citations to the transcript.

75.   After the transcript from Jane's Hearing was prepared, Jane filed an amended version of her appeal, which was rejected by the Dean of Students.

76.   Following unknown policies and procedures, President Fenves affirmed the Hearing's Decision ("Final Decision").

77.   As to avoid any contentions that Plaintiff Jane was in any manner concerned about new allegations of wrongdoing during the imposed academic integrity probation, Plaintiff Jane has waited to file this Complaint until said probation period had ended, which also supports Jane's request for an expunction (discussed hereafter) of all references and records of this disciplinary matters from Jane's records within Defendant UTAustin.

5.   ***UTAustin's Draconian Disciplinary Dragnet illegally violated Plaintiff Jane's Rights.***

78.   The issuance of the Final Decision, resulting from Defendant UTAustin's Draconian Disciplinary Dragnet is arbitrary, or, at least not reasonably

related to Defendant UTAustin's Purported Public Interest with regards to Plaintiff Jane.

79.    Further, the Sanctions imposed upon Plaintiff Jane were not appropriate to the alleged wrong committed by Plaintiff Jane, for such Sanctions are ongoing, for the rest of Plaintiff's Jane's life and impact Jane's Property Interest (defined hereafter).

80.    With the issuance of the Final Decision, the imposition of Defendant UTAustin's Draconian Disciplinary Dragnet upon Plaintiff Jane (including but not being limited to the Denial of Legal Counsel) was complete and suffered the Sanctions including the Stolen Class, in violation of Jane's:

    (a)    rights granted and protected under Section 504;

    (b)    rights granted and protected under the ADA;

    (c)    rights granted and protected by Title IX;

    (d)    substantive and procedural rights and guarantees of equal protection created by the Constitution of the United States; and

    (e)    substantive and procedural rights and guarantees of equal protection created by the Constitution of the State of Texas.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

For the purposes hereof, the foregoing violations shall be collectively referred to as the "UTAustin's Discriminatory Actions" committed by Defendant UTAustin.

6.    *Plaintiff Jane has been seriously harmed by UTAustin's Discriminatory Actions.*

81.    As a direct result of the Defendant UTAustin's Discriminatory Actions against Plaintiff Jane, the Potential Harm has become a reality for Jane.

82.    Upon information and belief, Defendant UTAustin's Discriminatory Actions constitutes disparate treatment of females (including Plaintiff Jane) and has had a disparate impact on female students (including Plaintiff Jane), in violation of Title IX.

83.    Such disparity between the the treatment other students of the general population *versus* a Targeted Student, based on information and belief, is also exhibited by the excessively high percentage of Targeted Student then being sanctioned by Defendant UTAustin. With such high percentages, the presumption of innocence obviously plays no part of the UTAustin's Draconian Disciplinary Dragnet.

84.    As a direct result of Defendant UTAustin's Discriminatory Actions against Plaintiff Jane, Jane has also suffered physical, emotional, and economic

harm as a result of Defendant UTAustin's Discriminatory Actions, and, shall suffer future physical, emotional, and economic harm, including actual and consequential damages.

85.    As a direct result of the Defendant UTAustin's Discriminatory Actions against Plaintiff Jane, Jane's mental health has deteriorated and is likely to continue to deteriorate.

86.    As a direct result of the Defendant UTAustin's Discriminatory Actions against Plaintiff Jane, Jane is also going to be denied access to advance classes and programs offered by Defendant UTAustin, resulting in harm to Jane's right to pursue such classes and programs, as well as harming her economically in the future (collectively hereafter, "Property Interests"), as previously discussed in the Potential Harm which is now a reality for Jane.

87.    Defendant UTAustin's Discriminatory Actions as to Plaintiff Jane were committed intentionally and in bad faith, or with reckless disregard for the outcome.

### 7.    *Defendant UTAustin's Action Under the Color of State Law.*

88.    The    administrators    participating    in    Defendant    UTAustin's Discriminatory Actions, including but not being limited to President Fenves, are the

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

applicable policy makers of Defendant UTAustin and were implementing the policies and customs of Defendant UTAustin when committing the Discriminatory Actions.

89.    Further, if such policies are not, in fact written, each of the administrators participating in Defendant UTAustin's Discriminatory Actions, including but not being limited to President Fenves (as applicable policymakers) were implementing the policies and customs of Defendant UTAustin in accord with the customs and practices of Defendant UTAustin.

90.    Additional insight into the university wide acceptance and implementation of the Defendant UTAustin's policies and customs being at the core of Defendant UTAustin's Draconian Disciplinary Dragnet of is provided by the following two events occurring in recent matters unrelated to Plaintiff Jane:

> (a)    In December 2018, a United States Congressman (from the State of Texas) contacted the Washington D.C. office of Defendant UTAustin to obtain more information related to one of his constituents (being a student at Defendant UTAustin) having been sanctioned as a result of the  Draconian Disciplinary Dragnet. In no uncertain terms, a vice chancellor of Defendant UTAustin informed the Congressman, *paraphrasing,* that Defendant UTAustin would not be responding to the Congressman's inquiry, would not look into any purported disciplinary matter, and would not even return

any future calls or further inquiries from the Congressman related to disciplinary matters of Defendant UTAustin's students; and

(b)   In a separate matter occurring this month, an attorney representing a separated Targeted Student, raised certain jurisdictional issues related to the Draconian Disciplinary Dragnet and was informed, *paraphrasing*, there might not be a written policy giving us (Defendant UTAustin) jurisdiction over the Targeted Student, but that is how we choose to proceed.

8.   ***Administrative Remedies.***

91.   There are no administrative remedy preconditions ("Preconditions") required prior to seeking relief under the laws being invoked herein by Plaintiff Jane. Even if such Preconditions did exist, the actions of Defendant UTAustin have shown that such efforts would be futile or are otherwise moot.

92.   As a result of Defendant UTAustin's Discriminatory Actions committed against Plaintiff Jane, Jane was required to engage legal counsel to protect Jane's rights and redress the harm Jane has suffered.

93.   All conditions precedent to Plaintiff Jane bringing these claims have been met.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

## E.  **PLAINTIFF'S CAUSES OF ACTION**

94.    Plaintiff Jane incorporates by reference the facts set forth in foregoing ARTICLE D: GENERAL BACKGROUND hereof.

### **COUNT ONE: SECTION 504 VIOLATIONS**

95.    As a university owned and operated by the State of Texas that receives grants and other funding from the United States, Defendant UTAustin falls under the jurisdiction and requirements of Section 504.

96.    As mandated by Section 504, Defendant UTAustin is prohibited from discriminating against students having been diagnosed with various disabilities.

97.    Plaintiff Jane's Disabilities qualify as disabilities covered by Section 504, and certain of Defendant UTAustin's Discriminatory Actions against Jane are direct violations of Section 504, including but not being limited to, Defendant UTAustin's:

> (a)    failure to provide Plaintiff Jane additional time to complete the Final;
>
> (b)    failure to properly consider Plaintiff Jane's Disabilities during the Jane's Hearing;
>
> (c)    failure to properly consider Plaintiff Jane's Disabilities during Jane's Appeal; and

(d)   failure to allow Plaintiff Jane's Legal Counsel to participate throughout the Draconian Disciplinary Dragnet.

98.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane in violation of Section 504 have caused Plaintiff Jane to suffer a loss of benefits and created economic losses, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Section 504.

99.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane in violation of Section 504 have caused Plaintiff Jane to suffer mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Section 504.

## COUNT TWO: ADA VIOLATIONS

100.   As a university owned and operated by the State of Texas that receives grants and other funding from the United States, Defendant UTAustin falls under the jurisdiction and requirements of the ADA.

101.   As mandated by the ADA, Defendant UTAustin is prohibited from discriminating against students having been diagnosed with various disabilities.

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

102.   Plaintiff Jane's Disabilities qualify as disabilities covered by the ADA, and certain of Defendant UTAustin's Discriminatory Actions against Jane are direct violations of Section 504, including but not being limited to, Defendant UTAustin's:

> (a)   failure to provide Plaintiff Jane additional time to complete the Final;
>
> (b)   failure to properly consider Plaintiff Jane's Disabilities while during Jane's Hearing;
>
> (c)   failure to properly consider Plaintiff Jane's Disabilities during the Jane's Appeal; and
>
> (d)   failure to allow Plaintiff Jane's Legal Counsel to participate throughout the Draconian Disciplinary Dragnet.

103.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane in violation of the ADA have caused Plaintiff Jane to suffer a loss of benefits and created economic losses, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with the ADA.

104.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane in violation of the ADA have caused Plaintiff Jane to suffer mental and emotional distress and damages, including all actual, consequential, continuing,

and future compensatory damages, for which Plaintiff Jane now sues in accord with the ADA.

## COUNT ONE: TITLE IX VIOLATIONS

105. As a university owned and operated by the State of Texas that receives grants and other funding from the United States, Defendant UTAustin falls under the jurisdiction and requirements of Title IX.

106. Defendant UTAustin's Discriminatory Actions against Plaintiff Jane are so severe, pervasive, and objectively offensive that Plaintiff Jane has been deprived access to educational opportunities and benefits provided by Defendant UTAustin in violation of Title IX.

106. Defendant UTAustin's Discriminatory Actions against Plaintiff Jane failed to protect Plaintiff Jane from improper Sanctions in violation of Title IX.

107. Defendant UTAustin's Discriminatory Actions as to Plaintiff Jane constitute disparate treatment of females (including Plaintiff Jane) and has had a disparate impact on female students (including Plaintiff Jane) in violation of Title IX.

108. Defendant UTAustin's discriminatory conduct toward Plaintiff Jane, in violation of Title IX has caused Plaintiff Jane to suffer a loss of benefits and

created economic losses, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Title IX.

109.   Defendant UTAustin's  Discriminatory  Actions against Plaintiff Jane in  violation  of  Title IX have caused Plaintiff Jane to suffer mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Title IX.

## COUNT FOUR: SECTION 1983 VIOLATIONS

110.   Defendant UTAustin's implementation of the Draconian Disciplinary Dragnet, the Final Decision, the Discriminatory Actions committed against Plaintiff Jane as well as Defendant UTAustin's Educational Process View are not warranted denials of Jane's right to support the Public Interest purportedly being protected.

111.   Section 1983 of Title 42 of the United States Code provides, in part,:

> "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, and citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an action at law, suit in equity, or other proper proceeding for redress…"

112.   Defendant UTAustin's Discriminatory Actions were committed against Plaintiff Jane under the color of law and resulted in the violation of Plaintiff Jane's rights under the United States Constitution and other federal laws.

113.   Specifically, Defendant UTAustin's Discriminatory Actions were committed under the color of law and resulted in the violation of Plaintiff Jane's rights under:

(a)   Section 504;

(b)   the ADA;

(c)   Title IX;

(d)   the procedural due process requirements of the United States Constitution as set forth in the Fourteenth Amendment, in violation of Jane's Property Rights;

(e)   the substantive due process requirements of the United States Constitution set forth in the Fourteenth Amendment in violation of Jane's Property Rights; and

(f)   the equal protection requirements of the United States Constitution set forth in the Fourteenth Amendment in violation of Jane's Property Rights.

114.   Defendant UTAustin's discriminatory conduct toward Plaintiff Jane, in violation of Section 1983 has caused Plaintiff Jane to suffer a loss of benefits and created economic losses, including all actual, consequential,

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Section 1983.

115.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane in violation of Section 1983 have caused Plaintiff Jane to suffer mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Jane now sues in accord with Section 1983.

116.   Plaintiff Jane also seeks equitable relief to which Plaintiff Jane is entitled by Section 1983, including but not being limited to:

(a)   reinstatement (to Plaintiff Jane) of the course grade that Jane would have been entitled to had the Sanction not been imposed;

(b)   requiring Defendant UTAustin to strike all negative information, emails, evaluations, and materials as to Plaintiff Jane relating to the foregoing actions and sanctions from the records of Defendant UTAustin; and

(c)   remove from all of Plaintiff Jane's records at Defendant UTAustin that Plaintiff Jane was (i) ever the subject of any disciplinary matter while attending Defendant UTAustin, and (ii) ever placed on Academic Integrity Probation.

## COUNT FIVE: VIOLATIONS OF THE TEXAS CONSTITUTION

117.   As a university owned and operated by the State of Texas, Defendant UTAustin's action are also subject to scrutiny of protections created by the Texas Constitution.

118.   Defendant UTAustin's Discriminatory Actions against Plaintiff Jane were committed under the color of law and resulted in the violation of Plaintiff Jane's' rights under the Constitution of the State of Texas.

119.   Specifically, Defendant UTAustin's Discriminatory Actions committed towards Jane were committed under the color of law and resulted in the violation of Plaintiff Jane's rights under:

      (a)    the procedural due process requirements of the Texas Constitution found in Article 1, Section 19;

      (b)    the substantive due process requirements of the Texas Constitution found in Article 1, Section 19; and

      (c)    the equal protection requirements of the Texas Constitution found in Article I, Section 3.

Hereafter, the foregoing shall be collectively referred to as "Violations of the Texas Constitution."

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

120.   Defendant UTAustin's Violations of the Texas Constitution as to Plaintiff Jane have caused Plaintiff Jane to suffer a loss of benefits and created economic losses.

121.   Defendant UTAustin's Violations of the Texas Constitution as to Plaintiff Jane  have caused Plaintiff Jane to suffer mental and emotional distress and damages.

122.   Although Plaintiff Jane, as a private party living in the State of Texas, has no standing to seek monetary damages for the Defendant UTAustin's Violations of the Texas Constitution as to Plaintiff Jane, Plaintiff Jane does seek the equitable relief to which Plaintiff Jane is entitled by Texas jurisprudence, including but not being limited to:

    (a)    reinstatement (to Plaintiff Jane) the course grade that Jane would have been entitled to had the Sanction not been imposed;

    (b)    requiring Defendant UTAustin to strike all negative information, emails, evaluations, and materials as to Plaintiff Jane relating to the foregoing actions and sanctions from the records of Defendant UTAustin;  and

    (c)    remove from all of Plaintiff Jane's records at Defendant UTAustin that Plaintiff Jane was (i) ever the subject of any disciplinary matter while attending Defendant UTAustin, and (ii) ever placed on Academic Integrity Probation.

## COUNT SIX: PUNITIVE DAMAGES

123.   Defendant UT Austin's Discriminatory Actions against Plaintiff Jane in violation of Section 504 were intentional and willful, or at a minimum, were committed with a lack of regard for, or with reckless indifference to, Plaintiff Jane's federally protected rights, thereby entitling Plaintiff Jane to punitive damages pursuant to Section 504, for which Plaintiff Jane now seeks in an amount of $ 1,000,000.00.

124.   Defendant UT Austin's Discriminatory Actions against Plaintiff Jane in violation of the ADA were intentional and willful, or at a minimum, were committed with a lack of regard for, or with reckless indifference to, Plaintiff Jane's federally protected rights, thereby entitling Plaintiff Jane to punitive damages pursuant to the ADA, for which Plaintiff Jane now seeks in an amount of $ 1,000,000.00.

125.   Defendant UT Austin's Discriminatory Actions against Plaintiff Jane in violation of Title IX were intentional and willful, or at a minimum, were committed with a lack of regard for, or with reckless indifference to, Plaintiff Jane's federally protected rights, thereby entitling Plaintiff Jane to punitive damages

pursuant to Title IX, for which Plaintiff Jane now seeks in an amount of $ 1,000,000.00.

126.   Defendant UT Austin's Discriminatory Actions against Plaintiff Jane in violation of Section 1983 were intentional and willful, or at a minimum, were committed with a lack of regard for, or with reckless indifference to, Plaintiff Jane's federally protected rights, thereby entitling Plaintiff Jane to punitive damages pursuant to Section 1983, for which Plaintiff Jane now seeks in an amount of $ 1,000,000.00.

### COUNT SEVEN: POST JUDGMENT INTEREST

126.   Plaintiff Jane also requests post judgment interest as may be allowed by applicable law.

### COUNT EIGHT: ATTORNEYS' FEES

127.   Plaintiff Jane should be awarded her reasonable and necessary attorneys' fees incurred in relation to the foregoing as allowed by applicable law.

### F.   REQUEST FOR JURY

128.   Plaintiff Jane hereby requests that a jury be empaneled, and, that the foregoing causes of actions and requests for relief be presented to such jury for resolution.

## G .  PRAYER FOR RELIEF

WHEREFORE, Plaintiff JANE UTAUS-DE DOE prays the necessary summons be issued, that upon final trial hereof, that judgment be entered in favor of Plaintiff Jane for the actual, consequential, and punitive damages set forth herein including post judgment interest; that Plaintiff Jane be reimbursed her reasonable and necessary attorneys' fees required to bring this matter; that all costs of Court be taxed against Defendant; that Plaintiff Jane be granted the equitable relief be granted; and that Plaintiff Jane have such further and other relief, general and special, both at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

GORMAN LAW FIRM, pllc

By: _____
Terry P Gorman, Esq.
Texas Bar No. 08218200
tgorman@school-law.co
Chigozie F. Odediran, Esq.
Texas Bar No. 24098196
codediran@school-law.co
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (512) 320-9177
Telecopier: (512) 597-1455
**COUNSEL FOR PLAINTIFF**
**JANE UTAUS-DE DOE**

**PLAINTIFF'S ORIGINAL COMPLAINT**
tpg 2019.02.09

48